No. 2--06--0198          Filed 2/28/07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| TIME SAVERS, INC., | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 02--L--1124 |
| | ) | |
| LASALLE BANK, N.A., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| (Patrick J. Stoltz, Individually and as Agent of | ) | Terence M. Sheen, |
| LaSalle Bank, N.A., Defendant). | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

On October 12, 2005, plaintiff, Time Savers, Inc. (TSI), filed its third amended complaint alleging the following five counts against defendant, LaSalle Bank, N.A. (LaSalle): (1) violation of the Illinois Fiduciary Obligations Act (Fiduciary Obligations Act) (760 ILCS 65/1 et seq. (West 2004)); (2) breach of contract; (3) common-law fraud; (4) conspiracy to defraud; and (5) aiding and abetting. LaSalle moved to dismiss TSI's third amended complaint, pursuant to section 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615 (West 2004)), and the circuit court granted that motion with prejudice on January 25, 2006. TSI timely filed its notice of appeal, and we affirm.

I. BACKGROUND

A. General Facts

TSI is a corporation that sells and rents used trailers and mobile aerial lift platforms used in the construction, painting, and road maintenance industries. TSI is owned by Stephen J. Harrison and Lawrence C. Kozlicki. Harrison, a certified public accountant, had a 20% interest in TSI, and Kozlicki, an attorney, had an 80% interest in TSI. In addition, Harrison owned a separate but similar business under the name "RDSJH Equipment Venture, LLC" (RDSJH) with his partner, Rick Dahl.

In 1996, TSI became a customer of LaSalle when LaSalle purchased the assets of Comerica Bank's Illinois division. In March 1997, TSI refinanced and restructured its debt to LaSalle and signed a revolving credit note for $500,000 and a term note for $1.8 million. In March 1998, TSI again refinanced and restructured its debt and signed a revolving credit note for $500,000 and a term note for $2.05 million. In December 1998, TSI signed a new revolving credit note for $1 million. In April and May 1999, TSI signed a $500,000 revolving credit note and a term note for $2.05 million. In April 2000, TSI signed a $2 million revolving credit note, and in May 2000, TSI signed a $500,000 revolving credit note. In May 2001, TSI refinanced and restructured its existing debt to LaSalle and again signed a $2 million revolving credit note and a $500,000 revolving credit note. In October 2001, TSI's finances deteriorated and the company's loans were assigned to LaSalle's Special Assets Group. By May 2002, TSI was no longer a customer of LaSalle.

## B. Procedural History

TSI filed its original complaint on October 11, 2002, against LaSalle and Patrick Stoltz,[1] LaSalle's loan officer. In that complaint, TSI included counts of common-law fraud, breach of fiduciary duty, negligence, conspiracy to defraud, breach of contract, aiding and abetting, conversion, tortious interference with economic relations, and tortious interference with prospective economic

---

[1]Patrick Stoltz was voluntarily dismissed from this lawsuit.

advantage. LaSalle moved to dismiss this complaint, but TSI acknowledged its complaint was defective and the court dismissed the complaint without prejudice on October 29, 2003.

TSI filed an amended complaint on December 23, 2003. In its complaint, TSI included the following counts against LaSalle: (1) common-law fraud; (2) violation of the Fiduciary Obligations Act; (3) negligence; (4) conspiracy to defraud; (5) breach of contract; (6) aiding and abetting; and (7) conversion. Again, LaSalle moved to dismiss the complaint, pursuant to section 2--615 of the Code (735 ILCS 5/2--615 (West 2004)), and the circuit court granted that motion on August 25, 2004.

TSI filed its second amended complaint on June 20, 2005, including the same counts. Again, LaSalle moved to dismiss, and its motion was granted by the circuit court on September 1, 2005. TSI then filed its third amended complaint on December 1, 2005, which is the subject of this appeal. LaSalle moved to dismiss the third amended complaint, and the circuit court granted that motion on January 25, 2006. The January 25 order states that TSI's third amended complaint was dismissed in its entirety with prejudice.[2] The order further states that "this order is a final and appealable order; there is no just cause to delay enforcement or appeal of this order." On February 17, 2006, TSI filed its notice of appeal. On February 24, 2006, LaSalle filed a motion for sanctions with the circuit court.

---

[2]TSI's brief requests we reverse the circuit court orders of January 25, 2006, and August 25, 2004. TSI states that the January 25 order addresses only violation of the Fiduciary Obligations Act. However, because TSI repleaded its claims for common-law fraud, conspiracy to defraud, and aiding and abetting in its third amended complaint, and the January 25 order states the complaint is dismissed in its entirety, we need address only the January 25 order.

C. TSI's Third Amended Complaint

In its third amended complaint, TSI pleaded the same counts as in its first amended complaint but appeals on only the following counts: (1) violation of the Fiduciary Obligations Act (count I); (2) common-law fraud (count III); (3) conspiracy to defraud (count IV); and (4) aiding and abetting (count V). TSI alleged the following facts in relevant part.

LaSalle had "actual knowledge of the nature of TSI's business, through loan application documents, banking agreement documents, loan committee meetings, and conversations with TSI personnel." Harrison embezzled funds from TSI by purchasing aerial lift equipment for his other company, RDSJH, and renting that equipment to TSI on an ongoing basis using TSI funds. Harrison and RDSJH purchased the equipment for their "re-rental scheme" with money from TSI's revolving credit account, which was later replenished with money Harrison and/or RDSJH subsequently borrowed from LaSalle. Further, LaSalle had "actual knowledge, from the analyses of TSI's loan applications, conversations with TSI personnel, and communications from Harrison" that various transfers of money were for "Harrison's personal benefit and not TSI's." TSI attached several letters from Harrison to LaSalle upon which it relied for its allegation that LaSalle had actual knowledge of Harrison's defrauding re-rental scheme. (We describe these letters in detail below.) LaSalle knew that this re-rental scheme could eventually put TSI out of business and failed to alert Kozlicki as to Harrison's and RDSJH's activities. Further, by allowing Harrison to continue these activities, LaSalle knowingly raised TSI's cost of doing business, raised its interest costs and payments, and caused TSI to lose millions of dollars in business profits

TSI alleged that on May 11, 1999, LaSalle gave Harrison $193,960 of TSI's revolving credit funds to purchase equipment for RDSJH. TSI attached a May 10, 1999, letter on TSI letterhead from Harrison to LaSalle that stated the following:

"Please advance from the Time Savers, Inc. Revolving Line of Credit the sum of $193,960 and deposit the funds into the Stephen Harrison/Rick Dahl checking account number 53-023-4857-7. These funds are being used to purchase seventeen SJ3219 and two Terex TB 44's (invoices attached).

Once our new loan is funded, please direct the repayment of this amount from those funds."

On May 27, 1999, Harrison wrote to LaSalle on RDSJH letterhead, directing the bank to do the following:

"Pursuant with our new Loan Agreement for $250,000, please disburse the funds accordingly:

Repay the Time Saves, Inc. [sic], Revolving Line of Credit the sum of $139,680. This presents a partial repayment of their advance so that we could acquire two Terex TB44 Boom Lifts and seventeen Skyjack SK3219 scissor lifts. I have attached copies of the manufacturer's invoices and our remittances.

Additionally, please deposit the balance of the loan proceeds, a total of $110,320 into our demand deposit account #53-0234857-7. These funds are being used to acquire fourteen Skyjack SK3219 scissor lifts, costing $110,320, invoice attached. The remaining balanced [sic] owed TSI $54,280 will be made up of by a combination of excess cash flow and the tentative sale of one of our CH60 boom lifts."

On August 12, 1999, Harrison wrote the following letter to LaSalle on TSI letterhead:

"Pursuant to our discussions over the past few days, Rick and I have decided to purchase eight SK8841 Scissor lifts. Total cost for these units is $265,336.32. Accordingly, please wire transfer one-half of the purchase price. I'll wire transfer the balance early next week. Please charge Time Savers, Inc. Revolver [sic] Line of Credit Loan Acct. No. 5300000174. I'll replace the funds with funding from our new loan request."

On August 16, 1999, Harrison wrote the following letter to LaSalle on TSI letterhead:

"Please wire transfer the balance due ($132,043.16) on the eight Skyjack 8841 scissors [sic] lifts as we discussed last week. Please charge Time Savers, Inc. Revolver [sic] Line of Credit Loan Acct. No. 5300000174. I'll replace the funds with funding from our new loan request."

On August 26, 1999, Harrison wrote the following letter to LaSalle on RDSJH letterhead:

"Attached is a copy of the original invoice from G & W Equipment, Inc. regarding the purchase of eight SK 8841 for $265,336.32 on August 8, 1999. Additionally, I have enclosed copies of the wire transfer instruction that were completed on August 12 and 16 of 1999 at my direction. Since I used Time Savers, Inc. Revolving Line of Credit to fund these two wire transfer, please direct the repayment of $264,086.32 to TSI Revolving Line of Credit and deposit the balance of the loan proceeds into our DDA Account."

Loan committee note documents were also attached for the years of 1998 through 2001. The loan documents indicate that leasing equipment is more expensive than owning but provides the company with more flexibility in providing various types of equipment to its customers. The loan documents also list RDSJH as "affiliated debt," and in 2000 indicated that "much of the leased equipment is

from RDSJH, an entity owned 50% by Steve Harrison (RDSJH is showing interim profitability of $250M)" and the "other portion of the leased equipment relates to a lease with Terex (the manufacturer of the equipment)."

In count I, TSI alleged LaSalle violated the Fiduciary Obligations Act, and in addition to the facts already discussed, it alleged the following. Harrison was a fiduciary as defined in section 1 of the Fiduciary Obligations Act (760 ILCS 65/1 (West 2004)). The transfers described in the attached letters constituted embezzlement by Harrison and a breach of his fiduciary duties to TSI. LaSalle had actual knowledge that Harrison was using TSI's money for the benefit of RDSJH, a company in which LaSalle knew Kozlicki had no interest but Harrison was a 50% partner. LaSalle violated sections 5 and/or 9 of the Fiduciary Obligations Act (760 ILCS 65/5, 9 (West 2004)), "by knowingly making multiple unauthorized transfers from TSI's accounts to the account of Harrison's creditor and to a checking account owned by Harrison's company RDSJH." LaSalle had "actual knowledge that Harrison was embezzling from, and defrauding TSI, in violation of 760 ILCS 65/5 and 9." LaSalle knew this because of the various attached letters and loan committee documents and from conversations that LaSalle's loan officer, Stoltz, had with Harrison. Finally, TSI alleged that LaSalle acted in bad faith when making the unauthorized transfers because "LaSalle knew of and/or suspected Harrison's actions and plans were for his personal benefit and not TSI's, and deliberately did no investigation as to whether TSI's fiduciary, Harrison, was acting improperly, nor did it give any warning or notice to TSI's 68% majority owner, Kozlicki."

In count III, TSI complained of common-law fraud. TSI alleged that LaSalle transferred funds from TSI's revolving line of credit to RDSJH's account with full knowledge that those funds were being used for the purchase of aerial lift equipment for RDSJH and that such transfers were in

violation of the loan agreement between LaSalle and TSI. LaSalle also transferred money from TSI's revolving credit line to G & W Equipment, Inc.'s account for RDSJH's benefit. LaSalle also lent money to RDSJH despite knowing that its purchases would be used to siphon TSI profits. LaSalle's actions violated its duty to act in TSI's best financial interest, to protect TSI's financial interests, money, credit line, and credit reputation, not to make unauthorized transfers of TSI funds, and not to misrepresent TSI's actual loan amount and/or loan transactions.

Further, LaSalle knew that RDSJH's only means of repaying its loans from LaSalle was from TSI's lease payments for renting RDSJH's equipment. LaSalle refused to lend TSI additional money to purchase its own equipment and chose to allow RDSJH to use TSI funds to purchase equipment to TSI's detriment. LaSalle did not mention these activities to Kozlicki even though Stoltz entertained Kozlicki on several occasions from 1998 to 2001. LaSalle, through its advertising and contracts, made material representations to TSI that it would work in TSI's best interest and not make unauthorized transfers of TSI's money, and TSI relied on those statements to its detriment.

Count IV alleged LaSalle conspired to defraud and basically restated the same facts and allegations already discussed. In addition, TSI alleged that LaSalle, through Stoltz, committed numerous overt and covert acts in furtherance of an agreement with Harrison and/or RDSJH to defraud TSI.

Count V complained of aiding and abetting and included allegations that LaSalle, through Stoltz, assisted Harrison and Dahl in committing the crimes of embezzlement and grand larceny when LaSalle allowed them to misuse TSI funds and siphon TSI profits.

## II. ANALYSIS

At the outset, we address jurisdiction since LaSalle filed a sanctions motion after the notice of appeal was filed. We retain jurisdiction, despite the filing of the motion for sanctions, because the notice of appeal was filed from the January 25, 2006 order, which contained Supreme Court Rule 304(a) language (155 Ill. 2d R. 304(a)) that there is no just reason to delay enforcement or appeal. See Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd., 182 Ill. 2d 6, 9 (1998) (holding that appellate court retained jurisdiction of dismissal of the plaintiff's complaint with prejudice even where motion for sanctions was filed in trial court after notice of appeal was filed, when final order dismissing the plaintiff's complaint contained Rule 304(a) language).

Next, because the sole issue in this appeal is whether the circuit court erred in dismissing TSI's complaint, pursuant to section 2--615 of the Code, our review is de novo. Young v. Bryco Arms, 213 Ill. 2d 433, 440 (2004). In reviewing the sufficiency of a complaint, we accept all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true while viewing all allegations in the light most favorable to the plaintiff. Young, 213 Ill. 2d at 441. However, Illinois is a fact-pleading state. Capitol Indemnity Corp. v. Stewart Smith Intermediaries, Inc., 229 Ill. App. 3d 119, 123 (1992). Therefore, conclusions of law and conclusory factual allegations unsupported by specific facts are not deemed admitted. Village of South Elgin v. Waste Management of Illinois, Inc., 348 Ill. App. 3d 929, 930-31 (2004). Using these parameters, we evaluate the sufficiency of TSI's complaint.

### A. Fiduciary Obligations Act

TSI alleged that LaSalle breached sections 5 and 9 of the Fiduciary Obligations Act (760 ILCS 65/5, 9 (West 2004)) in that (1) LaSalle acted in bad faith, and (2) LaSalle acted with actual knowledge that Harrison was breaching his fiduciary duties. We begin first by considering the

relevant sections of the Fiduciary Obligations Act. Section 1 of the Fiduciary Obligations Act (760 ILCS 65/1 (West 2004)) defines "good faith" as follows: "A thing is done 'in good faith' within the meaning of this Act, when it is in fact done honestly, whether it be done negligently or not." Section 5 of the Fiduciary Obligations Act provides as follows:

"If a check or other bill of exchange is drawn by a fiduciary as such, or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument." 760 ILCS 65/5 (West 2004).

Section 9 of the Fiduciary Obligations Act provides as follows:

"[I]f a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and indorsed by him, if he is

empowered to indorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith." 760 ILCS 65/9 (West 2004).

The Fiduciary Obligations Act, therefore, relieves banks of liability for negligence and serves as a defense against allegations of negligence. Continental Casualty Co. v. American National Bank & Trust Co. of Chicago, 329 Ill. App. 3d 686, 702 (2002). However, a plaintiff may recover under the Fiduciary Obligations Act if he can prove (1) that the bank had actual knowledge of the fiduciary's misappropriation of the principal's funds, or (2) that the bank had knowledge of sufficient facts that its actions in paying the funds amount to bad faith. Continental Casualty, 329 Ill. App. 3d at 702. TSI argues that it has adequately pleaded that LaSalle had actual knowledge and, alternatively, acted in bad faith.

" ' "Actual knowledge" has been defined as the awareness at the moment of the transaction that the fiduciary is defrauding the principal' " or having express factual information that funds are being used for private purposes that violate the fiduciary relationship. Continental Casualty, 329 Ill. App. 3d at 703, quoting Master Chemical Corp. v. Inkrott, 55 Ohio St. 3d 23, 28, 563 N.E.2d 26, 30-31 (1990). In determining whether a bank has acted in bad faith, courts will consider whether it was

commercially unjustifiable for the payee to disregard and refuse to learn readily available facts such that it was bad faith to remain passive. Continental Casualty, 329 Ill. App. 3d at 703.

While we agree with TSI that a plaintiff is not required to plead the evidentiary facts that will be used to prove the defendant's knowledge (Ward v. Community Unit School District No. 220, 243 Ill. App. 3d 968, 974 (1993)), TSI cannot avoid dismissal merely by using the words "actual knowledge" and "bad faith" (County of Macon v. Edgcomb, 274 Ill. App. 3d 432, 438 (1995)). Further, "[m]ere suspicious circumstances are not enough to require the bank to inquire" into the fiduciary's actions, as there are "many legitimate reasons why an agent and principal might engage in odd checking practices." Johnson v. Citizens National Bank of Decatur, 30 Ill. App. 3d 1066, 1072 (1975). The Fiduciary Obligations Act was meant to shift the burden of employing honest fiduciaries to the principal instead of the banking institution. Mikrut v. First Bank of Oak Park, 359 Ill. App. 3d 37, 48-49 (2005).

In Mikrut, 359 Ill. App. 3d at 41, the plaintiffs sued the defendant bank for breach of the Fiduciary Obligations Act after the plaintiffs' attorney improperly indorsed the plaintiffs' checks, deposited the money into his client escrow account, and converted the money for his personal use. The plaintiffs claimed the bank acted in bad faith because (1) the bank knew of the attorney's personal financial information by handling his mortgage and maintaining his personal accounts, and (2) the attorney handled the bank's chief officers' legal matters. Mikrut, 359 Ill. App. 3d at 50. Because the bank had access to all of the attorney's financial information, the plaintiffs argued that the bank could have discovered the fraudulent use of the plaintiffs' money. Mikrut, 359 Ill. App. 3d at 50. The court rejected the plaintiffs' argument because bad faith requires evidence that the bank suspected the fiduciary was acting improperly and "deliberately refrained from investigating" so that

the bank could avoid knowledge of the activity. Mikrut, 359 Ill. App. 3d at 50. The court stated that the plaintiffs did not present any evidence that the bank suspected that the attorney was acting improperly, and instead the evidence showed that the attorney made deposits into a client escrow account, which was not a per se alarming transaction. Mikrut, 359 Ill. App. 3d at 50. Further, even if the bank did suspect impropriety, the plaintiffs did not present evidence that the bank "deliberately refrained from investigating." Mikrut, 359 Ill. App. 3d at 50. Therefore, the court ruled that the bank did not accept the checks in bad faith. Mikrut, 359 Ill. App. 3d at 50.

Relying on the same set of facts, the plaintiffs also argued that the bank had actual knowledge that the attorney was breaching his fiduciary duty by depositing the checks at issue. Mikrut, 359 Ill. App. 3d at 50. The court rejected this argument by stating the record merely showed that, at best, the bank was aware that the attorney was the plaintiffs' fiduciary. Mikrut, 359 Ill. App. 3d at 51. The plaintiffs did not present any evidence suggesting that the bank had actual knowledge that the attorney's act of depositing the checks into the client escrow account was a breach of his fiduciary obligation. Mikrut, 359 Ill. App. 3d at 51. Therefore, the court held that the plaintiffs failed to establish the bank had actual knowledge. Mikrut, 359 Ill. App. 3d at 51.

We find Mikrut instructive even though that court was reviewing an order granting a motion for summary judgment rather than a dismissal of a pleading. In this case, TSI has similarly failed to plead facts that support its conclusory allegations that LaSalle acted with actual knowledge or in bad faith. Like in Mikrut, TSI has attached documents that merely show that LaSalle knew Harrison was a fiduciary of TSI, that Harrison was a signatory to TSI's accounts, and that Harrison directed TSI funds to be paid to an RDSJH account and another creditor account. As in Mikrut, we do not find that these transactions are per se alarming such that LaSalle's duty to inquire further was

triggered. Further, TSI did not allege any facts that indicate LaSalle deliberately failed to inquire further even if the transactions were suspicious. Therefore, TSI failed to allege that LaSalle acted in bad faith. Cf. Continental Casualty, 329 Ill. App. 3d at 704 (finding sufficient facts supporting bad-faith claim where bank allowed multiple deposits through automatic teller machines, bank employees examined such checks, and the checks had improper signatures that bank employees should have identified).

Likewise, TSI failed to adequately allege that LaSalle had actual knowledge of Harrison's defrauding activities. TSI alleged that LaSalle, through Stoltz, had actual knowledge by virtue of the loan committee documents, the letters from Harrison directing funds, and conversations with Stoltz. No details relating to any conversations are in the complaint. The loan committee documents do not suggest any improprieties on Harrison's part. In fact, the loan committee documents acknowledge that Harrison is part owner of RDSJH and that TSI regularly does business with RDSJH. The fact that TSI and RDSJH regularly conducted business together does not support the allegation that the transactions between TSI and RDSJH should have alarmed LaSalle. TSI cannot defeat dismissal "by simply reciting the words 'actual knowledge' and 'bad faith.' " Edgcomb, 274 Ill. App. 3d at 438 (affirming dismissal of counts alleging actual knowledge where the plaintiffs pleaded only unsupported facts that (1) the bank knew the owners of the accounts involved; (2) county funds were used for personal use; (3) improper or unauthorized signatures were involved; (4) improper or unauthorized indorsements were present; and (5) the transactions involved large sums of money); see also Hosselton v. First American Bank, 240 Ill. App. 3d 903, 908-09 (1993) (affirming dismissal where plaintiffs alleged only that bank allowed fiduciary funds to be deposited into fiduciary's personal accounts, because such transactions, without more facts, do not support

allegations that bank had actual knowledge or acted in bad faith). Therefore, count I of the complaint was properly dismissed because TSI failed to plead sufficient facts that LaSalle had actual knowledge or acted in bad faith.

### B. Common-Law Fraud

In count III, TSI alleged common-law fraud. The elements of common-law fraud are: (1) a false statement of material fact; (2) the defendant knew the statement was false; (3) the defendant intended that the statement induce the plaintiff to act; (4) the plaintiff relied upon the truth of the statement; and (5) the plaintiff suffered damages from his reliance on the statement. Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 496 (1996). A complaint for common-law fraud "must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." Connick, 174 Ill. 2d at 496-97. "Conclusionary allegations will not substitute for well-pled facts." Small v. Sussman, 306 Ill. App. 3d 639, 646 (1999).

TSI alleged merely that LaSalle made representations to TSI, through its advertising, communications, and contracts with TSI, that it would work in TSI's best interests and not make unauthorized transfers of TSI's money that would be detrimental to TSI. The trial court did not err in dismissing this count. TSI did not specify with any degree of particularity what actual representations were made. TSI also did not specify who at TSI received the representations, when the representations were made, or who at LaSalle made the representations. Without any such details and having pleaded only conclusory allegations, TSI's common-law fraud claim was properly dismissed.

C. Conspiracy To Defraud

Count IV of TSI's complaint alleged that LaSalle conspired with Harrison to defraud TSI. "The elements of civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." Fritz v. Johnston, 209 Ill. 2d 302, 317 (2004). Conspiracies are often intentionally "shrouded in mystery," which by nature makes it difficult for the plaintiff to allege with complete specificity all of the details of the conspiracy. Adcock v. Brakegate, Ltd., 164 Ill. 2d 54, 66 (1994). Hence, a plaintiff is not required to plead with specificity and precision the facts that are within the defendant's control and knowledge. Adcock, 164 Ill. 2d at 66. However, the complaint "must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." Fritz, 209 Ill. 2d at 318.

TSI alleged that LaSalle, through its employee Stoltz, agreed to act unlawfully with Harrison to make unauthorized transfers of funds from TSI's account to accounts benefitting RDSJH. TSI alleged the ultimate transactions were overt acts in furtherance of the conspiracy to defraud TSI. TSI alleged that LaSalle, through Stoltz, knew that RDSJH's only income was from TSI's rental income and LaSalle refused to lend TSI money to purchase its own equipment. TSI alleged this forced it to continue to rent equipment and raised its cost of doing business. As a result, TSI lost profits to RDSJH's benefit.

While we recognize TSI may not be able to plead facts surrounding the conspiracy with specificity, especially facts that may be within the control of LaSalle, TSI cannot rely solely on its conclusory statement that a conspiracy existed. Based on the facts TSI pleaded, one cannot properly

infer that LaSalle, through Stoltz or another employee, conspired with Harrison to defraud TSI. LaSalle processed transfers of TSI funds at the direction of an authorized signatory (Harrison) to accounts of businesses known to conduct business with TSI. The transactions outlined in the complaint were not unlawful transactions. See Adcock, 164 Ill. 2d at 63 ("To state a cause of action for conspiracy, a plaintiff must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character"). Moreover, TSI failed to adequately allege its underlying claims of common-law fraud and violation of the Fiduciary Obligations Act, and so its conspiracy claim must also fail as a matter of law. See Indeck North American Power Fund, L.P. v. Norweb PLC, 316 Ill. App. 3d 416, 432 (2000) ("Where, as here, a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails"). Therefore, TSI cannot properly state a claim for conspiracy, and the circuit court properly dismissed count IV.

### D. Aiding And Abetting

Finally, TSI alleged that LaSalle aided and abetted Harrison and RDSJH in the crimes of embezzlement and grand larceny. A claim for aiding and abetting requires the following elements: " '(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation.' " Thornwood, Inc. v. Jenner & Block, 344 Ill. App. 3d 15, 27-28 (2003), quoting Wolf v. Liberis, 153 Ill. App. 3d 488, 496 (1987). TSI alleged that LaSalle assisted Harrison and Dahl in the crimes of embezzlement and grand larceny when LaSalle allowed Harrison to make unauthorized transfers that caused TSI to ultimately lose profits. TSI, however, did not allege that

LaSalle substantially assisted in these crimes, but, rather, TSI alleged LaSalle assisted Harrison and Dahl in their goal to "operate RDSJH, a separate business from TSI that was siphoning profits from TSI," and put TSI out of business. Because TSI failed to plead a necessary element of an aiding and abetting claim, the circuit court properly dismissed count V of TSI's complaint.

### III. CONCLUSION

Based on the foregoing reasons, we affirm the January 25, 2006, order of the circuit court of Du Page County that dismissed TSI's third amended complaint with prejudice.

Affirmed.

BYRNE and CALLUM, JJ., concur.