FOURTH DIVISION

August 11, 2005

No. 1-04-2118

JOSEPH EVITTS and PATRICIA EVITTS, ) Appeal from the

) Circuit Court of

Plaintiffs-Appellants, ) Cook County.

)

v. ) No. 03 L 11807

)

DAIMLERCHRYSLER MOTORS CORPORATION and )

CHRYSLER SERVICE CONTRACTS, INC., ) Honorable

) Patrick E. McGann,

Defendants-Appellees. ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs Joseph and Patricia Evitts appeal from the circuit court’s dismissal of their second amended complaint for breach of warranty and violation of consumer protection statutes.  For the reasons that follow, we affirm.

Plaintiffs purchased a 1999 Chrysler Sebring convertible in May 1999 from a Chrysler dealership in Elmhurst.  Included in the purchase price was a 3-year/36,000-mile warranty.  Plaintiffs also purchased an extended, 6-year/75,000-mile warranty, issued by defendant Chrysler Service Contracts, Inc. (CSC).  The model that plaintiffs purchased had been manufactured with an allegedly defective rear defroster, the design of which caused its wires to separate from the rear window under stress from the repeated operation of the vehicle’s convertible top.  

Plaintiffs filed their initial complaint, as a putative class action, against defendant DaimlerChrysler Motors Corp. (DCMC) in July 2003, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 
et seq. 
(West 2002)) and the Uniform Deceptive Trade Practices Act (Deceptive Trade Practices Act) (815 ILCS 510/1 
et seq. 
(West 2002)) and numerous other state consumer protection statutes, as well as breach of express and implied warranty of merchantibility in violation of the Magnuson-Moss Warranty – Federal Trade Commission Improvement Act (15 U.S.C. § 2301 
et seq. 
(2000)).  Plaintiffs attached a January 2002 technical service bulletin for the 1999 Sebring, which addressed the defect and its repair, and alleged that they had had their vehicle’s rear defroster replaced on four occasions, beginning in February 2002, but that it was still in a defective state.

DCMC moved to dismiss the complaint for failure to state a claim, pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2000)).  

Soon afterward, plaintiffs served discovery requests and interrogatories on DCMC seeking information as to the defroster’s design and any consumer complaints or technical service bulletins regarding its operation.  In their interrogatories, plaintiffs sought the identities of those involved in the design of their model’s rear defroster and those responsible for fielding and responding to complaints or authorizing repairs to damaged defrosters, any other technical service bulletins concerning the defroster, the names and addresses of those who had purchased or leased Chrysler Sebring convertibles since 1995 and those who had complained or made warranty claims concerning the vehicles’ rear defroster, and the description of any testing performed on the Sebring’s rear defroster.  Plaintiffs also requested production of all complaints and warranty claims concerning the rear defroster on Sebring convertibles; documents concerning the defroster’s design; pleadings from other litigation concerning the design of the Sebring’s rear defroster, all manuals and warranties relating to 1996, 1997, 1998, 1999, 2000, 2001, and  2002 Sebring convertibles; all documents relating to any testing of the rear defroster; DCMC’s annual financial statements from 2000 to 2002; any communications between DCMC and any agencies that may have handled consumer complaints regarding the Sebring’s rear defroster; all documents relating to plaintiffs and to all other purchasers of Sebring convertibles between 1996 and 2002; and any communications concerning the rear defroster in the Sebring and other vehicles manufactured by DCMC.

DCMC requested and was granted a motion to stay discovery pending the circuit court’s ruling on its motion to dismiss. 

In response, plaintiffs sought and were granted leave to file an amended complaint and did so in October 2003, adding CSC as an additional defendant and again alleging violations of the Consumer Fraud and Deceptive Trade Practices Acts and breach of written warranty.  Defendants filed another motion to dismiss with prejudice, arguing that plaintiffs’ complaint failed to state a claim upon which relief could be granted, that plaintiffs had failed to allege that defendants had knowledge of the defect, that the written warranty had expired before plaintiffs sought repair of the alleged defect, and that plaintiffs had not incurred any expense in repairs to the vehicle under the terms of the extended service contract.

The trial court granted defendants’ motion, finding that plaintiffs had failed to plead facts sufficient to support a claim that defendants knew of the defective defroster at the time that plaintiffs purchased their vehicle, thereby defeating plaintiffs’ claims of consumer fraud and deceptive trade practices.  The court further found that the manufacturer’s warranty had expired by the time plaintiffs first reported failure of the rear defroster on their vehicle, that the extended service contract did not constitute a warranty, and that defendants had not failed to fulfill their obligations under the contract.  The court dismissed the amended complaint and granted plaintiffs leave to file a second amended complaint.

In their second amended complaint, plaintiffs included additional factual allegations of defendant’s knowledge of the defective defroster, specifically that defendants’ knowledge of the defect could inferred by the facts that the technical service bulletins (dated May 18, 2001, and revised January 21, 2002) were issued and that defendants should have and likely did discover the defect while testing the product prior to its sale.  Defendants renewed their motion to dismiss, pursuant to section 2-615, arguing that plaintiffs failed to reasonably plead that DCMC knowingly made misrepresentations concerning the defect prior to plaintiffs’ purchase of their vehicle, that DCMC had fulfilled its obligations under the limited warranty, that plaintiffs incurred no expense in having the defroster replaced pursuant to the extended service contract, and that plaintiffs otherwise failed to plead the essential elements of their claims for damages.

The circuit court granted defendants’ motion and dismissed the complaint with prejudice, finding that plaintiffs’ most recent complaint still did not sufficiently allege that defendants had knowledge of the defective defroster at the time that plaintiffs purchased their vehicle, and therefore that plaintiffs’ claims for consumer fraud and deceptive trade practices failed.  The court also found, again, that the manufacturer’s limited warranty had expired by the time plaintiffs sought repair of their vehicle’s defroster and that plaintiffs’ allegations of prior knowledge of the defect by defendants was not sufficient to revive it.

Plaintiffs now appeal, contending that defendants breached the extended service contract, that the circuit court erred in finding that plaintiffs failed to sufficiently allege defendants’ knowledge of the defect, and that the circuit court prevented plaintiffs from gathering evidence to support their claims by staying discovery while it considered defendants’ motion to dismiss.  

This court reviews the grant of a section 2-615 motion to dismiss 
de novo
, and we accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party.  
Krueger v. Lewis
, 342 Ill. App. 3d 467, 470 (2003).  We will uphold the dismissal of a complaint when it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief.  
Krueger
, 342 Ill. App. 3d at 470.  The plaintiff is not required to set out his or her evidence, but only allege the ultimate facts to be proved.  
Krueger
, 342 Ill. App. 3d at 470.  However, we will disregard mere conclusions of law or fact unsupported by specific factual allegations.  
Lipinksi v. Martin J. Kelly Oldsmobile, Inc.
, 325 Ill. App. 3d 1139, 1144 (2001).  

In order to state a cause of action under the Consumer Fraud Act, a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) the defendant’s intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce.  
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d 472, 492 (1999).  An omission or concealment of a material fact in the conduct of trade or commerce constitutes a deceptive act.  815 ILCS 505/2 (West 2002).  A material fact is one which a buyer would be expected to rely on in deciding whether to purchase a particular product.  
Connick v. Suzuki Motor Company, Ltd.
, 174 Ill. 2d 482, 505 (1996).  Where a plaintiff claims consumer fraud on the premise that the defendant concealed or omitted material facts regarding products from potential buyers with the intent that buyers rely on such a concealment or omission, a plaintiff must allege that the fact omitted or concealed was known to the defendant at the time of concealment.  
Miller v. William Chevrolet/Geo, Inc.
, 326 Ill. App. 3d 642, 658 (2001).  Furthermore, a valid claim must show that the concealment or omission proximately caused the plaintiff’s injury.  
Connick
, 174 Ill. 2d at 501.  

On appeal, plaintiffs reiterate their contentions that the issuance of the technical service bulletins, which covered model years back to 1996, and the fact that defendants subjected the model vehicle to testing before sale to the public inevitably lead to the inference that defendants had knowledge of the defectively designed defroster prior to the date plaintiffs purchased their vehicle.  Plaintiffs argue that the circuit court erred and ran afoul of the rule enunciated in 
Winfrey v. Chicago Park District
, 274 Ill. App. 3d 939 (1995), in which this court found that "a plaintiff’s cause of action is not imperiled when knowledge of facts rests with the defendant.” 
Winfrey
, 274 Ill. App. 3d at 949.  They also cite to 
Lipinski
, where we found that a technical service bulletin describing the problem alleged in the plaintiff’s complaint was sufficient to plead a cause of action for consumer fraud.  
Lipinski
, 325 Ill. App. 3d at 1147-48.  Plaintiffs argue that the existence of the technical service bulletins in this case dictates that defendants must have known of the allegedly defective defrosters well before the dates the bulletins were issued.

The facts of this case are distinguishable from those of 
Lipinski
.  In that case, the plaintiff purchased a used 1994 Oldsmobile Cutlass Supreme in April 1997.  The vehicle’s manufacturer, General Motors, had issued a technical service bulletin in January 1997 warning of excess oil consumption in several of its vehicles, included the model year purchased by plaintiff.  The plaintiff was not informed of the problem when he purchased the vehicle and later had to have the vehicle’s engine replaced when its original one failed as a result of the oil consumption problem.  
Lipinski
, 325 Ill. App. 3d at 1142-43.  This court held that the January 1997 technical service bulletin was sufficient to allege that General Motors had knowledge of the alleged defect at the time of sale for purposes of pursuing a claim for consumer fraud and deceptive trade practices.  
Lipinski
, 325 Ill. App. 3d at 1147-48.  Here, the technical service bulletins were issued in May 2001 and January 2002, two years after plaintiffs purchased their vehicle.  In order to sustain a consumer fraud action, plaintiffs had to allege that defendants knew of the defect at the time of purchase, May 1999.  See 
Miller
, 326 Ill. App. 3d at 658.  Plaintiffs contend that the complaints that led to the issuance of the technical service bulletins must have preceded the date they purchased their vehicle, since the bulletins referenced model years dating back to 1996.  We find such an allegation to be conclusory, in that there is no indication that defendants would have had reason to believe that the allegedly defective defroster was present in each succeeding model year.  Moreover, plaintiffs did not seek repair of their own vehicle’s defroster for more than two years after the date of purchase, which indicates that the prior complaints plaintiffs assume led to the bulletins’ issuance could have arisen well after the 1999 Sebring was first offered for sale. 

Plaintiffs also maintain that the testing of the 1999 Sebring undertaken by defendants prior to its marketing to the public must have inevitably revealed the defect prior to the date of sale.  Again, we find plaintiffs’ assertion insufficient to allege knowledge of any defective design.  There is no indication as to when the testing took place, how extensive it was, or whether it yielded any results showing problems with the rear defroster.  Again, plaintiffs owned and operated their vehicle for nearly three years before they sought repair of its rear defroster; it would not be reasonable to expect DCMC to test its vehicles well beyond their relevant model years.  Moreover, defendants repaired the defroster on plaintiffs’ vehicle on at least four occasions, beyond the expiration of the manufacturers’ warranty and pursuant to the extended service contract.  Therefore, for plaintiffs to insist that said testing inevitably led to defendants’ knowledge of the alleged defect is conclusory and is not sufficient to impute that knowledge to defendants at the time of sale. 

For these same reasons, plaintiffs’ complaint was insufficient to allege a claim for deceptive trade practices, as knowledge by the defendant is required in order to ascribe liability.  See 815 ILCS 510/2 (West 2002).  Accordingly, we find that the circuit court was not in error in dismissing plaintiff’s second amended complaint 

Plaintiffs next contend on appeal that the circuit court erred in granting defendants’ motion to dismiss because they sufficiently alleged both a breach of their written warranty and a breach of the extended service contract.

Plaintiffs first argue that their complaint was sufficient to allege a breach of the original manufacturer’s warranty in that defendants had knowledge of the allegedly defective defroster at the time plaintiffs purchased their vehicle and failed to disclose, rendering the limitation on the warranty unconscionable.  Defendants respond, again, that plaintiffs are unable to allege that defendants had knowledge of and concealed the defective defroster and that the manufacturer’s warranty was thus not unconscionable, and that the warranty had expired by the time plaintiffs sought repair of the alleged defect.

Under Illinois law, claims for breach of limited warranty are governed by the Illinois Uniform Commercial Code (UCC) (810 ILCS 5/1-101 
et seq. 
(West 2002)).  
Pearson v. DaimlerChrysler Corp.
, 349 Ill. App. 3d 688, 693-94 (2004).  A plaintiff may seek damages pursuant to section 2-719(2) of the UCC where a warranty provides an exclusive or limited remedy and the warrantor fails to provide such a remedy in a reasonable manner.  
Pearson
, 349 Ill. App. 3d at 694.  In a complaint for damages for breach of a limited warranty, the plaintiff must allege the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the warranty’s terms, a failure by the defendant to do so, compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty.  
Hasek v. DaimlerChrysler Corp.
, 319 Ill. App. 3d 780, 793 (2001).  In order to ascribe liability for a breach, a plaintiff must show that there was a defect, that he or she gave notice to the warrantor and requested repair, and the warrantor undertook repairs but failed to fix the problem within a reasonable number of attempts.  
Pearson
, 349 Ill. App. 3d at 696.  

Because express warranties are contractual in nature, the language of the warranty itself controls and dictates the rights and obligations of the parties to it.  
Hasek
, 319 Ill. App. 3d at 788.  Illinois law holds that express warranties of limited duration cover only defects that become apparent during the warranty period.  
Tokar v. Crestwood Imports, Inc.
, 177 Ill. App. 3d 422, 431-32 (1988).  To allow a customer to seek damages for breach of an express warranty beyond the limits specified in that warranty would in effect compel the manufacturer to insure all latent defects for the entire life of the product and would place a burden on the manufacturer for which it did not contract.  
Walsh v. Ford Motor Co.
, 588 F. Supp. 1513, 1536 (D.D.C. 1984).  

Here, the manufacturer’s express warranty covered defects and malfunctions to plaintiffs’ vehicle for either 3 years or 36,000 miles from the date of purchase.  Plaintiffs first sought repair of the rear defroster after their vehicle had exceeded 44,000 miles.  Having already concluded that plaintiffs’ complaint was insufficient to allege that DCMC knowingly sold them a vehicle with a defective rear defroster, we find that the express manufacturer’s warranty sold with the vehicle was not unconscionable and therefore did limit plaintiffs’ remedies to repairs sought within the first 3 years or 36,000 miles.  Plaintiffs’ complaint contains no allegation that they sought repairs to the defroster within the express warranty period or that defendants failed to repair it in a reasonable time and manner pursuant to the terms of the warranty.  Accordingly, we find that the trial court did not err in dismissing that claim.

Plaintiffs next contend that they properly asserted a claim for breach of warranty in alleging that defendants breached the extended service contract by failing to adequately repair the rear defroster despite five attempts to do so.  They argue that the inherent design defect in the original defroster and its subsequent replacements constitute a failure to make successful repairs in a reasonable number of attempts and thus results in a breach of the service contract.  Defendants counter that the extended service contract did not function as a warranty for purposes of the Magnuson-Moss Act and that they complied with the terms of the contract, negating any claim plaintiffs may have had for breach.

The Magnuson-Moss Act defines a written warranty as:

"(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than the resale of such product.”  15 U.S.C. ྷ 2301(6) (2000).

The Magnuson-Moss Act defines a service contract as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product.”  15 U.S.C. ྷ 2301(8) (2000).  Illinois courts have held that agreements that do not affirm the quality or workmanship of an automobile or warrant against any defects, but rather offer to repair certain defects not otherwise covered by a warranty and that may occur within a certain time period or certain number of miles, are to be construed as service contracts rather than warranties and that alleged breaches thereof are not actionable as breach of warranty claims.  See 
Saladino v. Team Chevrolet, Inc.
, 242 Ill. App. 3d 735, 740-41 (1993); 
Nibert v. Al Piemonte Ford Sales, Inc.
, 294 Ill. App. 3d 423, 430-31 (1998).  Courts have also found that breaches of service contracts are actionable under the Magnuson-Moss Act where the consumer is damaged by the failure of the supplier to comply with the terms of the service contract.  
Lysek v. Elmhurst Dodge, Inc.
, 325 Ill. App. 3d 536, 541-43 (2001); 15 U.S.C. ྷ 2310(d)(1) (2000).

Here, the agreement plaintiff purports to be an extended warranty is titled, repeatedly, a "service contract,” states explicitly that it is not part of the subject vehicle’s warranty, and states that the service plan would pay the costs to correct failures to various parts of the vehicle, including the rear window defroster.  It does not affirm the quality or workmanship of the vehicle or warrant against any defects.  Plaintiffs sought and were administered repairs to and replacements of the rear window defroster on at least five occasions pursuant to the service agreement; defendants complied with their obligations under the agreement.  It is not apparent from the record that plaintiffs incurred any expenses or any other injuries as a result of any alleged noncompliance.  Accordingly, we find that the circuit court was correct in granting defendants’ motion to dismiss plaintiffs’ complaint for failure to state a claim for breach of warranty.

Lastly, plaintiffs contend that the circuit court abused its discretion by staying discovery pending its ruling on DCMC’s motion to dismiss.  They argue that the court’s refusal to reopen discovery in effect required them to prove their case at the pleading stage and violated Supreme Court Rule 201(a).  166 Ill. 2d R. 201(a).  Defendants respond that the circuit court was correct to circumscribe discovery because plaintiffs’ discovery requests were overly broad and were submitted with the intent of supporting wide-ranging class action litigation, when plaintiffs’ complaints were insufficient to allege their own individual claims.

Parties may obtain discovery by full disclosure regarding any relevant matter, even where the discovery relates to the claims of the parties seeking disclosure.  
Yuretich v. Sole
, 259 Ill. App. 3d 311, 317 (1994); 166 Ill. 2d R. 201(b).  A circuit court has wide latitude in ruling on discovery motions, and we will not disturb such a ruling unless it constitutes a manifest abuse of discretion.  
Mutlu v. State Farm Fire & Casualty Co.
, 337 Ill. App. 3d 420, 432-34 (2003).  A court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court’s view.  
Mutlu
, 337 Ill. App. 3d at 434.  

A circuit court may properly stay or quash a discovery request when it has sufficient information upon which to rule on a motion to dismiss.  
Adkins Energy, LLC, v. Delta-T Corp.
, 347 Ill. App. 3d 373, 381 (2004).  However, a court should not refuse a discovery request and grant a motion to dismiss where it reasonably appears discovery might assist the nonmoving party.  
Adkins Energy
, 347 Ill. App. 3d at 381.  Discovery is not necessary where a cause of action has not been stated.  
Adkins Energy
, 347 Ill. App. 3d at 381.

The decision in this case turned on whether plaintiffs’ second amended complaint was sufficient to state a claim upon which relief could be granted, regardless of whatever extrinsic evidence plaintiffs’ discovery requests might have produced.  In order to survive a motion to dismiss the counts alleged, plaintiffs were required to plead a knowing misrepresentation or omission by DCMC, a refusal or failure to comply with the terms of the manufacturer’s warranty and the extended service contract by DCMC and CSC, and damage to plaintiffs as a result. Plaintiffs’ interrogatories and discovery requests were clearly aimed at securing class certification rather than educing evidence to support their own individual claims.  The majority of their requests sought information and documentation concerning vehicles they had not purchased, individuals who may or may not have had anything to do with the design and manufacture of their particular vehicle, and purchasers of vehicles manufactured in six different model years.  

As demonstrated above, plaintiffs failed to adequately plead that defendants had knowledge of the defroster’s problems at the time of sale, failed to adequately plead any noncompliance with the terms of the warranty or service contract by the defendants, and failed to plead any damage to themselves.  On its face, the complaint fails to state a claim for even their own individual relief, much less a class-wide claim for relief.  Discovery of information regarding purchasers other than plaintiffs and vehicles other than their own would not have assisted plaintiffs in surviving defendants’ motion to dismiss.  Therefore, we conclude that the circuit court’s stay of the discovery request pending its ruling on the motion to dismiss was not an abuse of discretion.

For the forgoing reasons, we affirm the judgment of the circuit court.

QUINN, P.J., and THEIS, J., concur.