2020 IL App (1st) 191657-U

No. 1-19-1657

Order filed December 2, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JOHN MADONIS, individually and as beneficiary of Land Trust No. 1-13355 ZBIGNIEW CISZEK individually and as beneficiary of Land Trust No. 6778, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) ) | No. 17 CH 13103 |
| v. | ) ) ) ) | Honorable Raymond Mitchell, |
| STERLING BAY COMPANIES, LLC STERLING INTEREST, LLC, FULTON GREEN LLC, 819 W. FULTON MARKET LLC, FULTON GREEN OWNER LLC, | ) ) ) ) ) | Judge presiding. |
| Defendants-Appellees. | ) ) | |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the trial court's order granting defendants' motion to dismiss for failure to state a claim where plaintiffs set forth only conclusory allegations regarding defendants' participation in any scheme to purchase plaintiffs' property at below market values. As it did not reasonably appear that discovery would assist plaintiffs in stating a cause of action,

we find the trial court's decision to deny plaintiffs' motion to discovery was not an abuse of discretion.

¶ 2      Plaintiffs John Madonis and Zbigniew Ciszek[1] appeal the dismissal with prejudice of their second amended complaint and denial of their request for discovery. In 2014, Madonis and Ciszek sold their parcels of real estate with assistance of their real estate agent, Scott Maesel of Sperry Van Ness (Sperry). Following the sale, plaintiffs discovered that the properties were later mortgaged at much higher values. Plaintiffs initially brought suit against Maesel and Sperry. They later instituted a separate action against the instant defendants, who were purchasers of the properties or related entities. The two cases were consolidated. The trial court granted defendants' subsequent motion to dismiss plaintiffs' second amended complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2018)) for failure to state a claim. The trial court also denied plaintiffs' request for discovery, severed the cases, and entered a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Plaintiffs timely appealed.

¶ 3      On appeal, plaintiffs argue that they adequately stated causes of action against defendants for consumer fraud, common law fraud, intentional interference with a contract, breach of fiduciary duty, and rescission or constructive trust. For the following reasons, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5      Our recitation of the facts is based on the allegations in the second amended complaint, which must be taken as true for purposes of motion to dismiss under section 2-615 of the Code. *Ward v. Mid-American Energy Co.*, 313 Ill. App. 3d 258, 259 (2000).

---

[1] Madonis brought suit individually and as beneficiary of Chicago Title Land Trust, as successor trustee to Bridgeview Bank and Trust, under trust agreement dated May 5, 2008, known as Trust No. 1-13355. Ciszek brought suit individually and as successor Trustee to Chicago Land Title Trust Co., as successor Trustee to Private Bank, as successor trustee to Founders Bank, as Trustee under Trust Agreement dated October 24, 2005 known as Trust No. 6778.

¶ 6 Madonis and Ciszek entered into separate brokerage contracts with Maesel in 2013 and 2014, respectively, to sell parcels of real estate they owned located in the Fulton Market District of Chicago, Illinois. With Maesel's assistance, Madonis entered into a purchase and sale agreement with defendant Sterling Interest, LLC (Sterling Interest), on August 27, 2014, for his four parcels of real estate for $7 million. In a separate purchase and sale agreement on August 12, 2014, Ciszek sold his one parcel of real estate to defendant 819 W. Fulton Market LLC (Fulton Market) for $1.825 million.

¶ 7 According to plaintiffs, Maesel insisted that they had to sell their properties as a "package deal" to obtain the highest price, and that Maesel assured plaintiffs that they were obtaining the highest price possible. Maesel also informed plaintiffs that they were selling all of their properties to defendant Sterling Bay Companies, LLC (Sterling Bay). However, according to plaintiffs, Sterling Bay set up "shell companies," such as defendants Sterling Interest, Fulton Green, LLC (Fulton Green), and Fulton Green Owner, LLC (Fulton Green Owner) (together, the Sterling Bay defendants). Sterling Interest signed the purchase agreement. Plaintiffs contended that they discovered at closing that Sterling Bay set up Fulton Green to actually buy Madonis's properties, which later transferred the properties to Fulton Green Owner, but these entities had the same address and officers.

¶ 8 Further, plaintiffs asserted that Maesel, whom they allege was friends with high-ranking employees of Sterling Bay, provided confidential information about Madonis's financial and personal difficulties with his son (a tenant in one of the properties) to Sterling Bay to try to pressure Madonis to give Sterling Bay a better deal. Plaintiffs additionally alleged that Maesel failed to disclose that he had a partial ownership interest in Fulton Market, the purchaser of Ciszek's property. Plaintiffs asserted that Maesel violated his fiduciary and statutory duties in acting as a

"dual agent" without plaintiffs' consent, making fraudulent representations, and disclosing confidential information.

¶ 9     As a result, plaintiffs contend Maesel fraudulently induced them to sell their properties at below market value, as evidenced by the fact that (1) twelve days after closing, a bank appraised Ciszek's property at $2.5 million when Fulton Market obtained a mortgage, and (2) seven months after the sale, a Sterling Bay entity obtained a $20 million mortgage on the properties purchased from Madonis. Plaintiffs claimed that defendants knew of and encouraged Maesel's conduct and conspired with Maesel to purchase the properties at below market value.

¶ 10     Plaintiffs first instituted suit in 2016 against Maesel and his employer, Sperry, seeking damages in case no. 16-L-3589 for breach of fiduciary duty, violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act), 815 ILCS 505/1 *et seq.* (West 2016), and violation of the and the Real Estate License Act of 2000 (225 ILCS 454/15-1, *et seq.* (West 2014)). The trial court dismissed the breach of fiduciary duty claim and the case against Maesel and Sperry proceeded on claims of consumer fraud and violation of the Real Estate License Act of 2000.

¶ 11     One and a half years later, plaintiffs brought suit for rescission against the Sterling Bay defendants and Fulton Market, and the case was consolidated with the Maesel action. Upon motion by defendants, the trial court dismissed the rescission complaint with prejudice on grounds that plaintiffs had an adequate remedy at law.

¶ 12     Plaintiffs then filed a 24-count first amended complaint against defendants asserting claims of fraud, tortious/intentional interference with a contract, breach of fiduciary duty, constructive fraud, rescission, and consumer fraud. Underlying these claims, plaintiffs alleged that defendants

were liable for conspiring with, inducing, agreeing to, aiding and abetting, and accepting the benefits of Maesel's wrongful actions.

¶ 13    Both the Sterling Bay defendants and Fulton Market filed motions to dismiss pursuant to section 2-615. The trial court dismissed the first amended complaint for failure to state a claim. The trial court dismissed with prejudice all four counts which sought rescission because it had previously determined that plaintiffs had an adequate remedy at law, namely, the difference between the purchase price and the subsequent higher valuations of the properties. The trial court dismissed plaintiffs' breach of fiduciary duty claims on grounds that they were precluded by the Real Estate License Act of 2000. As to the common law fraud claims, the trial court held that although plaintiffs asserted that defendants knew of Maesel's alleged misrepresentations and misconduct, plaintiffs did not contend that defendants made any misrepresentations themselves, which was insufficient to show fraud. Regarding consumer fraud, the trial court held defendants had not provided any "services" under the Consumer Fraud Act as one-time purchasers of the property, that plaintiffs failed to plead sufficient factual allegations that defendants conspired with Maesel; and that plaintiffs' argument that defendants knew of and accepted the benefits of Maesel's alleged violations was an insufficient legal basis to hold defendants liable. The trial court also dismissed Sterling Bay from all counts on grounds that plaintiffs only alleged that it set up shell companies to conduct the purchase and all entities had the same officers and address, which was insufficient to show Sterling Bay's participation in the transactions.

¶ 14    On a motion for reconsideration by Fulton Market, the trial court also dismissed the two remaining counts—tortious interference with a contract—against Fulton Market because plaintiffs failed to plead any specific conduct by Fulton Market to establish that it interfered in plaintiffs'

contracts with Maesel or conspired with Maesel to interfere, and Fulton Market's mere knowledge of another's illegal acts was insufficient to show conspiracy.

¶ 15    Plaintiffs filed a second amended complaint on January 28, 2019, against defendants Fulton Market and Sterling Bay containing 12 counts. In it, plaintiffs reserved for appeal all previously dismissed counts in prior complaints. As before, plaintiffs asserted in support of all of its claims that defendants conspired with or aided and abetted Maesel to purchase the properties for less than market value. Plaintiffs relied on the same set of factual allegations in support of each count: that Maesel told plaintiffs they were getting the highest prices for their properties and that they had to sell as a "package deal"; that Sterling Bay and Fulton Market knew this was false because the properties appraised at higher values; that Sterling Bay and Fulton Market knew that Maesel concealed that he had an interest in the entity purchasing Ciszek's property; and that Maesel shared confidential information about Madonis. Plaintiffs requested compensatory and punitive damages, attorney fees, and equitable relief for each count. The following summarizes the 12 counts: count 1: common law fraud (Ciszek v. Sterling Bay); count 2: intentional interference with Ciszek's brokerage contract with Maesel (Ciszek v. Sterling Bay); count 3: consumer fraud (Ciszek v. Sterling Bay); count 4: fraud (Ciszek v. Fulton Market), count 5: intentional interference with Ciszek's brokerage contract with Maesel (Ciszek v. Fulton Market); count 6: consumer fraud (Ciszek v. Fulton Market); count 7: fraud (Madonis v. Sterling Bay); count 8: intentional interference with Madonis's brokerage contract with Maesel (Madonis v. Sterling Bay); count 9: consumer fraud (Madonis v. Sterling Bay); count 10: fraud (Madonis v. Fulton Market); count 11: intentional interference with Madonis's brokerage contract with Maesel (Madonis v. Fulton Market); count 12: consumer fraud (Madonis v. Fulton Market).

¶ 16    In early 2019, the Sterling Bay defendants and Fulton Market filed separate motions to dismiss the second amended complaint with prejudice pursuant to section 2-615. Fulton Market argued that plaintiffs merely set forth conclusory allegations and improperly and confusingly intermingled theories of aiding and abetting and conspiracy within their counts for fraud, consumer fraud, and intentional interference with a contract. Fulton Market argued that plaintiffs failed to allege any statements by Maesel that could support a fraud claim, as Maesel's alleged statements that plaintiffs were obtaining the highest price and had to sell the parcels as a package constituted matters of opinion. Further, plaintiffs failed to allege any agreement between Maesel and Fulton Market to accomplish fraud, and plaintiffs did not allege any misrepresentations made by Fulton Market. Additionally, plaintiffs failed to allege any specific action by Fulton Market to induce a breach of Maesel's brokerage contracts. Fulton Market also asserted that it did not engage in any conduct falling under the Consumer Fraud Act.

¶ 17    The Sterling Bay defendants argued in their motion to dismiss that Ciszek sold his property to Fulton Market and he had no relationship to the Sterling Bay defendants. Further, the second amended complaint contained only conclusory allegations that the Sterling Bay defendants knew of Maesel's conduct, without any specific facts regarding their involvement. Concerning fraud, plaintiffs failed to allege specific facts showing that defendants conspired or participated in Maesel's fraudulent scheme, or that they made any misrepresentations themselves. Further, Maesel's statements constituted opinion, not fact, and plaintiffs admitted that they knew there were two separate buyers at the time of closing, as is revealed in the separate purchase agreements. The Sterling Bay defendants argued that plaintiffs failed to show that Maesel's opinions were false, that they knew the opinions were false, or that reliance on his statements was reasonable. Plaintiffs also failed to allege any specific conduct showing the Sterling Bay defendants intentionally

interfered with any brokerage contracts or that or that either brokerage contract with Maesel was actually breached. As to consumer fraud, plaintiffs failed to allege facts showing that the Sterling Bay defendants engaged in trade or commerce falling under the Consumer Fraud Act, that they made any misrepresentations to plaintiffs, or that they fraudulently concealed information from plaintiffs. Further, the Consumer Fraud Act does not allow for a cause of action against parties who knowingly receive benefits from the person violating it. The Sterling Bay defendants additionally noted that although the second amended complaint made several references to conspiracy and aiding and abetting, it did not formally set forth such claims as separate counts and also failed to allege sufficient facts to support such claims.

¶ 18    Plaintiffs filed a combined response to the motions to dismiss and also filed a motion for a stay and to allow discovery. The trial court denied the latter.

¶ 19    On July 9, 2019, the trial court granted defendants' motions to dismiss pursuant to section 2-615 of the Code on the basis that plaintiffs failed to adequately state a claim as to all counts, and it dismissed the second amended complaint with prejudice. The trial court held that, with respect to all counts, plaintiffs' second amended complaint set forth conclusory allegations regarding defendants' knowledge of Maesel's actions and did not allege any specific actions by Fulton Market or the Sterling Bay defendants themselves to show that they made any misrepresentations to plaintiffs, took specific actions to induce Maesel to breach his brokerage contracts, or otherwise engaged in actions to aid, abet, or conspire with Maesel. The trial court held that defendants' mere knowledge of Maesel's conduct, even if defendants benefited thereby, was an insufficient basis to show fraud, intentional interference with a contract, or consumer fraud. Further, with respect to the claims between Ciszek and Sterling Bay and the claims between Madonis and Fulton Market, the trial court noted that Sterling Bay did not purchase Ciszek's property and had no relationship

or interactions with him, and, similarly, Fulton Market did not purchase Madonis's property and had no connection with him. As to consumer fraud, the trail court held that defendants' actions as one-time purchasers of the properties did not constitute rendering "services" under the Consumer Fraud Act.

¶ 20    In dismissing the second amended complaint with prejudice, the trial court observed that this was plaintiffs' third attempt at pleading any viable causes of actions against defendants, and despite the fact that the second amended complaint was 300 paragraphs long and contained 12 counts, it failed to state a claim; consequently, "no set of facts can be pled that would entitle Plaintiffs to relief." The trial court also entered an order severing the two cases and entered a Rule 304(a) finding as to the July 9, 2019, order.

¶ 21    Plaintiffs filed a timely notice of appeal from the July 9, 2019, order, in addition the trial court's previous orders denying discovery and granting the motions to dismiss the earlier versions of plaintiffs' complaints.

¶ 22                                    II. ANALYSIS

¶ 23                              A. Standard of Review

¶ 24    We review a motion to dismiss under section 2-615 of the Code *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). The question presented by a section 2-615 motion is "whether the allegations of the complaint, when taken as true and viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009). "Illinois is a fact-pleading jurisdiction. A plaintiff must allege facts sufficient to bring his or her claim within the scope of the cause of action asserted." *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). "Mere conclusions of law or facts unsupported by specific factual allegations in a complaint are insufficient to withstand

a section 2-615 motion to dismiss." *Ranjha v. BJBP Properties, Inc.*, 2013 IL App (1st) 122155, ¶ 9. The court considers only the allegations in the complaint and any exhibits attached thereto. *Lissner v. Michael Reese Hospital & Medical Center*, 182 Ill. App. 3d 196, 206 (1989).

¶ 25   We note that, on appeal, "this court reviews the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct." *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24.

¶ 26                       B. Conspiracy and Aiding and Abetting

¶ 27   On appeal, plaintiffs argue that they adequately stated claims of breach of fiduciary duty (in their first amended complaint), common law fraud, consumer fraud, and tortious interference (in their second amended complaint), and also sufficiently pleaded that defendants conspired with or aided and abetted Maesel in committing these torts.

¶ 28   To establish a civil conspiracy, a plaintiff must demonstrate: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004). "When a civil conspiracy is shown by circumstantial evidence, the evidence must be both clear and convincing." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 923 (2007).

¶ 29   Although a plaintiff need not "plead with specificity and precision the facts that are within the defendant's control and knowledge[,]" the plaintiff must still set forth "specific facts from which the existence of a conspiracy may properly be inferred." (Internal quotation marks omitted). *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 771-72 (2007). A plaintiff must allege the existence of an agreement by the defendant and that "the defendant knowingly and

voluntarily participated in the common scheme at the heart of the alleged civil conspiracy." *Redelmann*, 375 Ill. App. 3d at 924.

¶ 30    Along similar lines, aiding and abetting requires the following elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." (Internal quotation marks omitted). *Time Savers, Inc.*, 371 Ill. App. 3d at 772-73.

¶ 31    "[C]laims for civil conspiracy and aiding and abetting are not independent torts, *i.e.*, they both require underlying conduct that it tortious." *Chadha v. North Park Elementary School Association*, 2018 IL App (1st) 171958, ¶ 58. See *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 49 ("Because conspiracy is not an independent tort, if a plaintiff fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for conspiracy also fails." (Internal quotation marks omitted.)).

¶ 32    With these principles in mind, we now examine plaintiffs' claims for violation of fiduciary duties, common law fraud, consumer fraud, and tortious interference with a contract, which were all premised on allegations of conspiracy and aiding and abetting.

¶ 33                              C. Breach of Fiduciary Duty

¶ 34    In their first amended complaint, plaintiffs contended that defendants were liable for Maesel's breach of his common law fiduciary and statutory duties under the Real Estate License Act of 2000 (225 ILCS 454/1-1 *et seq* (West 2014)). Plaintiffs asserted that defendants knew or should have known that Maesel violated these duties and should be liable for their acts in aiding, abetting, or receiving the benefits of Maesel's violations. Plaintiffs sought compensatory damages, restitution, rescission, and/or imposition of a constructive trust. The circuit court found plaintiffs'

claims were precluded by the Real Estate License Act of 2000. On appeal, plaintiffs maintain that Maesel's fiduciary duties stem from both the Real Estate Licensing Act of 2000 and the common law and that Maesel violated both, and that they sufficiently stated a claim that defendants can be held liable because they assisted in these violations.

¶ 35    Generally, to establish a claim for breach of fiduciary duty, the plaintiff must allege that a fiduciary duty exists, defendant breached that duty, and the breach proximately caused the plaintiff's injury. *Neade v. Portes*, 193 Ill. 2d 433, 444 (2000). A fiduciary relationship may arise as a matter of law or due to "the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." *Benson v. Stafford,* 407 Ill. App. 3d 902, 912 (2010). A real estate broker is an agent of the property owner, which "engenders a type of fiduciary affiliation." *Kirkruff v. Wisegarver*, 297 Ill. App. 3d 826, 830 (1998).

¶ 36    However, the Real Estate License Act of 2000 abrogated common law fiduciary principles between a real estate broker and customer. 225 ILCS 454/15-5(a) (West 2014). Article 15 of the Act provides that the law was enacted to "govern the relationships between consumers of real estate brokerage services and real estate brokers ***. This Article applies to the exclusion of the common law concepts of principal and agent and to the fiduciary duties, which have been applied to managing brokers, brokers, and real estate brokerage services." 225 ILCS 454/15-5(a) (West 2014). Plaintiffs' breach of common-law fiduciary duty claims were therefore precluded by the Real Estate License Act of 2000. Thus, defendants could not have conspired or aided in Maesel's breach of that non-existent duty, and the trial court properly dismissed these claims.

¶ 37    Additionally, the Real Estate License Act of 2000 allows for private causes of action under only article 15 and not as to any other articles of the Act. 225 ILCS 454/20-125 (West 2014).

Plaintiffs pleaded some violations of article 15, such as a duty of loyalty and honesty to his client, to refrain from self-dealing, and to disclose all material facts related to a transaction of which he has actual knowledge (225 ILCS 454-15/15(a)(2)(C), 454/15-15(a)(2)(F), 454-15/25(a) (West 2014)). However, plaintiffs also cited other provisions outside of article 15, and these cannot form the basis of a claim.

¶ 38　We further observe that although plaintiffs sought a constructive trust as a remedy, this was unavailable as their claim was based on breach of fiduciary duty, which was abrogated by the Real Estate License Act of 2000. See *In re Bhayani*, 293 B.R. 911, 915-16 (Bankr. N.D. Ill. 2003) (plaintiff/debtor's action against real estate agent for constructive trust based on breach of common law fiduciary duties was abrogated by the Real Estate License Act of 2000).

¶ 39　Even if plaintiffs adequately alleged that Maesel violated the Real Estate License Act of 2000, we would nevertheless conclude that plaintiffs failed to sufficiently state a claim that defendants conspired with or aided and abetted Maesel in committing those violations. Plaintiffs do not assert that defendants themselves engaged in conduct which violated the Real Estate License Act of 2000, and could not, given defendants were not real estate agents. Other than bald assertions that defendants knew Maesel was violating the Real Estate License Act of 2000, plaintiffs failed to allege any specific conduct by Fulton Market or the Sterling Bay defendants to show that they induced, aided, or encouraged Maesel to commit any violation of the Act. *Redelmann*, 375 Ill. App. 3d at 924; *Time Savers,* 371 Ill. App. 3d at 772-73; *Chadha*, 2018 IL App (1st) 171958, ¶ 58.

¶ 40　Accordingly, we find the circuit court properly dismissed the breach of fiduciary duty and Real Estate License Act of 2000 claims. Regardless of whether plaintiffs sufficiently stated claims under the Real Estate License Act of 2000 against Maesel, they have failed to show entitlement to

relief against any of the instant defendants; a constructive trust is unavailable to plaintiffs, and plaintiffs have not alleged any specific facts showing that defendants conspired with or induced Maesel to violate his statutory duties.

¶ 41                                    D. Common Law Fraud

¶ 42    Plaintiffs next contend on appeal that they sufficiently pleaded their causes of action for common law fraud against defendants.

¶ 43    "The elements of common-law fraud are: (1) a false statement of material fact; (2) the defendant knew the statement was false; (3) the defendant intended that the statement induce the plaintiff to act; (4) the plaintiff relied upon the truth of the statement; and (5) the plaintiff suffered damages from his reliance on the statement." *Time Savers*, 371 Ill. App. 3d at 771. A claim for common-law fraud must allege with specificity and particularity the misrepresentations that were made, when they were made, and to whom they were made; conclusory allegations will not suffice. *Id.*

¶ 44    Plaintiffs' fraud claims were based on Maesel's alleged statements that the properties had to be sold as a "package deal" to obtain the best price and that plaintiffs were obtaining the highest price on their properties. However, these statements were not matters of material fact, but expressions of opinion. "The basis of a fraud or negligent misrepresentation claim must be a statement of fact, not an expression of opinion." *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 17. Our courts have determined that statements of opinion are not actionable, as "[a]n opinion is not a false statement of material fact and does not support an action for fraud." *Merrilees,* 2013 IL App (1st) 121897, ¶ 30. "Generally, financial projections are considered to be statements of opinion, not fact." (Internal quotation marks omitted). *Avon Hardware*, 2013 IL App (1st) 130750, ¶ 17 (fraud allegations based on projected sales figures were

not actionable as claims relied on statements of future performance). To that end, Illinois law requires that the alleged misrepresentation be a statement of present or preexisting fact, not a statement of future intent or conduct. *Abazari v. Rosalind Franklin University of Medicine and Science,* 2015 IL App (2d) 140952, ¶ 15. Mere predictions are not actionable; "assurances as to future events are generally not considered misrepresentations of fact." *Id.* (contractor's fraud claim premised on assurances from a business partner regarding a construction job was not actionable as assurances constituted merely opinion and "[t]he predictions *** that the job would be profitable certainly are not representations as to a material fact").

¶ 45     Additionally, plaintiffs failed to allege that Maesel actually knew his statements to be false at the time he made them, which is an element of fraud. *Time Savers,* 371 Ill. App. 3d at 771. Further, plaintiffs also do not allege that they reasonably relied on such statements. "In determining whether reliance was justifiable, all of the facts which the plaintiff knew, as well as those facts the plaintiff could have learned through the exercise of ordinary prudence, are taken into account." *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 125 (1995). "A person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another." *Id.* at 125-26 (quoting *Central States Joint Board v. Continental Assurance Co.*, 117 Ill. App. 3d 600, 606 (1983)). Plaintiffs do not allege that it was not possible to take simple measures to place Maesel's opinions in context, such as independently researching the values of their properties through other means available to them, consulting another realtor, researching similar property sales, or consulting an appraiser or online resources. We further note that, despite plaintiffs' argument that Maesel represented to plaintiffs that they had to sell their properties as a "package deal," they ultimately did not do this; rather, they sold to two different purchasers.

¶ 46    Plaintiffs also did not allege that defendants themselves made any misrepresentations. Plaintiffs instead relied on theories of conspiracy and aiding and abetting to link defendants to Maesel's statements. However, plaintiffs failed to sufficiently plead facts showing that defendants conspired with or aided and abetting Maesel in committing fraud in making such statements. That is, they failed to allege that defendants induced Maesel to make these representations, assisted him in making these statements, or agreed with Maesel to make these statements in order to induce plaintiffs to sell at below market value. A plaintiff's "mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Buckner v. Atlantic Plant Maintenance*, 182 Ill. 2d 12, 23 (1998). Rather, a plaintiff must set forth the facts and circumstances constituting the alleged conspiracy "with particularity." *Coghlan*, 2013 IL App (1st) 120891, ¶ 59. There were no specific facts alleged that showed that defendants rendered substantial, knowing assistance to Maesel by participating, aiding, or advising him in some way. *Time Savers, Inc.*, 371 Ill. App. 3d at 772-73 (aiding and abetting requires that a party substantially and knowingly assist in the wrongdoing). Similarly, a defendant's participation in a conspiracy must be knowing and voluntary, and " '[a]ccidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy.' " *Redelmann*, 375 Ill. App. 3d at 924 (quoting *McClure v. Owens Corning Fiberglass? Corp.*, 188 Ill. 2d 102, 133-34 (1999). As such, even if defendants merely knew of Maesel's fraudulent statements, this would be insufficient to show a conspiracy. *Id.* Thus, plaintiffs failed to sufficiently allege that either defendant understood that Maesel had a conspiratorial scheme and agreed to "do its part."

¶ 47    On a more specific note, we observe that plaintiffs failed to allege any conduct by Sterling Bay which would show participation in a scheme to defraud. Sterling Bay was not the entity which actually signed the purchase agreements with either plaintiff. Ciszek did not sell his property to

Sterling Bay or any Sterling Bay defendant or have any dealings with Sterling Bay. Although Sterling Interest executed the purchase agreement with Madonis, other than plaintiffs' bare assertion that Sterling Interest and other Sterling Bay defendants were entities created by Sterling Bay, plaintiffs failed to plead any specific facts to show they committed fraud or assisted Maesel in committing fraud. Madonis set forth only conclusory statements regarding Sterling Bay's knowledge of Maesel's actions and did not allege any specific actions by Sterling Bay. Plaintiffs also failed to plead any specific facts calling into question the legitimacy of these entities and does not advance a claim to pierce the corporate veil.

¶ 48    With respect to the claims of fraud against Fulton Market, we observe that Madonis did not sell his property to Fulton Market or have any dealings with or connection to it. Similarly, although plaintiffs alleged in their second amended complaint that Maesel had an interest in Fulton Market, they failed to allege what type of interest Maesel held or whether Maesel had any authority or control over this separate entity. Plaintiffs failed to allege that Maesel directed this entity to aid in any scheme to defraud, such that a court should pierce its corporate veil or hold it accountable for assisting in committing fraud. Accordingly, we find that the trial court properly dismissed plaintiffs' common-law fraud claims against defendants for failure to state a claim.

¶ 49                                  E. Consumer Fraud

¶ 50    We next turn to plaintiffs' claims under the Consumer Fraud Act. To state such a claim, the complaint must set forth the following:

> "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff
>
> rely on the deception; and (3) that the deception occurred in the course of conduct involving
>
> trade and commerce." *Govenoz v. Target Corp.*, 2015 IL App (1st) 113940, ¶ 113 (citing

*Connick v. Suzuki Motor Co., Ltd.,* 174 Ill. 2d 482, 501 (1996); 815 ILCS 505/10a (West 2012)).

¶ 51    To that end, "[a] plaintiff must at least plead with sufficient particularity and specificity, facts establishing the elements of fraud, including (1) what misrepresentations were made, (2) when they were made, (3) who made the misrepresentations, and (4) to whom they were made." *Perona v. Volkswagen of America, Inc.*, 292 Ill. App. 3d 59, 65 (1997) (citing *Connick*, 174 Ill. 2d at 496-97).

¶ 52    The Consumer Fraud Act defines "trade" and "commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1(f) (West 2014). As one-time purchasers of the properties or entities related to the purchasers, defendants have not provided any services under the Act such as selling or distributing any services or property, and plaintiffs do not allege as much. Thus, the trial court correctly determined that defendants themselves were not engaged in any trade or commerce under the Act.

¶ 53    Relying on the same allegations underlying their other claims, plaintiffs contended in the second amended complaint that Sterling Bay and Fulton Market were liable for consumer fraud based on Maesel's actions in that they conspired with or aided and abetted him and received the benefits of his actions.

¶ 54    However, our supreme court has "previously held that the Consumer Fraud Act does not provide a cause of action against those who knowingly receive the benefits from the person committing a violation of the Act." *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 52 (2001) (citing *Zekman v. Direct American Marketers, Inc.,* 182 Ill. 2d 359, 370 (1998)). Even when a

plaintiff alleges that a third party had "actual knowledge" of another's deceptive actions or that it knowingly received the benefit of another's fraud, this is insufficient to sustain a claim for consumer fraud. *Id.*

¶ 55 Here, plaintiffs failed to set forth specific facts showing that defendants, prior to the closing on the properties, directly participated in a scheme to make misrepresentations to plaintiffs regarding the sale of their properties. Plaintiffs did not allege that defendants directly made misrepresentations to plaintiffs or fraudulently concealed something from them. As in the case of plaintiffs' common-law fraud claims, Sterling Bay's alleged knowledge of Maesel's actions in selling Ciszek's property to Fulton Market was an insufficient basis to support Ciszek's consumer fraud claim against Sterling Bay or any Sterling Bay entity. With respect Ciszek's claim against Fulton Market, Ciszek failed to plead that Fulton Market itself engaged in behavior violating the Consumer Fraud Act, and its knowledge of Maesel's third-party actions was insufficient. Madonis's allegation that Sterling Bay was aware of Maesel's fraud and benefited therefrom is similarly insufficient to hold any Sterling Bay defendant liable for consumer fraud. As to Madonis's consumer fraud claim against Fulton Market, this entity did not purchase Madonis's property or engage in any "trade" with him under the Consumer Fraud Act. We therefore conclude that the trial court correctly dismissed plaintiffs' consumer fraud claims against defendants.

¶ 56                            C. Intentional Interference with a Contract

¶ 57 Plaintiffs next contend that they adequately pleaded in the second amended complaint that defendants intentionally interfered with plaintiffs' brokerage contracts with Maesel.

¶ 58 To prevail on a claim of tortious interference with a contract, a plaintiff must plead and prove:

" '(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contractual relationship between the plaintiff and another; (3) the defendant's intentional and unjustifiable inducement of a breach of the contract; (4) a breach of contract by the other caused by the defendant's wrongful acts; and (5) damage to the plaintiff.' " *Chadha*, 2018 IL App (1st) 171958, ¶ 60 (quoting *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 175 (2003)).

¶ 59 In support of their claim that defendants induced Maesel to breach his brokerage contracts with plaintiffs, plaintiffs rely on the same allegations as in their other claims, that is, defendants conspired with and aided and abetted Maesel in committing fraud, violating his fiduciary and statutory duties, and receiving and using confidential information. However, besides these general statements, plaintiffs failed to allege any specific, intentional conduct by defendants that induced Maesel to allegedly breach his contracts with plaintiffs.

"Establishing inducement in the context of a claim for tortious interference with a contract, 'requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way.' M. Polelle & B. Ottley, Illinois Tort Law, at 334 (1985), citing *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy Inc.*, 214 Ill. App. 3d 1073, 1081 (1991) (no inducement absent showing competitor actively solicited plaintiff's business); *Upton v. Parkway Motors, Inc.*, 90 Ill. App. 2d 426, 430 (1967) (merely implanting idea to bring suit to rescind contract did not constitute inducement)." *In re Estate of Albergo*, 275 Ill. App. 3d 439, 446 (1995).

¶ 60 Similarly, a failure to act to rectify a situation also does not constitute active inducement sufficient to show intentional interference with a contract. *Id.*

¶ 61    Plaintiffs failed to cite specific facts showing that defendants actively persuaded, encouraged, or incited Maesel to breach his contracts. Plaintiffs offered the bare allegation that defendants knew that (1) Maesel told plaintiffs that they were obtaining the highest price they could obtain and that (2) Maesel and/or defendants concealed appraisals for higher values. However, there is no indication from the complaint that any appraisals occurred until after the real estate transactions were completed and the new owners subsequently obtained mortgages on the properties. There were simply no allegations that defendants induced Maesel to make any such misrepresentations to plaintiffs or to conceal any valuation information from plaintiffs.

¶ 62    Specifically, as to Ciszek's claim against Sterling Bay, Sterling Bay did not purchase Ciszek's property and Ciszek did not allege any specific actions by Sterling Bay that caused a breach. Similarly, Ciszek failed to allege that Fulton Market intentionally induced a breach of Ciszek's brokerage contract with Maesel as Ciszek only alleged that Fulton Market was aware of and benefitted from a breach. Regarding Madonis's claims, we similarly find that Sterling Bay's mere knowledge of an alleged breach by Maesel, without more, was insufficient to show inducement, and Madonis failed to allege any facts showing that Fulton Market induced a breach of contract between Madonis and Maesel. Accordingly, plaintiffs failed to adequately state a claim of tortious interference with a contract. The trial court correctly dismissed these claims.

¶ 63                              E. Election of Remedies

¶ 64    Plaintiffs also argue on appeal that the trial court erred in dismissing their claims for equitable relief such as a constructive trust or rescission based on the election of remedies doctrine. Plaintiffs assert that they may pursue both remedies at law for damages and in equity at the same time.

¶ 65    As defendants note, the trial court did not dismiss these claims based on the election of remedies doctrine. Rather, the trial court dismissed these claims on grounds that plaintiffs had an adequate remedy at law in the form of money damages.

¶ 66    "A constructive trust is an equitable remedy imposed by a court to prevent the unjust enrichment of a party through actual fraud or breach of a fiduciary relationship." *In re Liquidation of Security Casualty Co.,* 127 Ill. 2d 434, 447 (1989). As our supreme court has stated, "[a] constructive trust is created when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property [citation], because it would be inequitable for that party to retain possession of the property." *Suttles v. Vogel,* 126 Ill. 2d 186, 193 (1988). Generally, a constructive trust may be imposed where some form of wrongdoing is present, that is, fraud, breach of fiduciary duty, duress, coercion, or mistake. *Id.*

¶ 67    Similarly, rescission of a contract is an extraordinary remedy which cancels the contract and restores the parties to the *status quo ante* before the contract was executed. *Newton v. Aitken,* 260 Ill. App. 3d 717, 719 (1994). A party is entitled to rescission where he proves: (1) a material breach or fraud, and (2) that the parties may be returned to the *status quo ante* before the contract. *Id*. As an equitable remedy, it is generally left to the trial court's discretion, which we review for an abuse of discretion. *CC Disposal, Inc. v. Veolia ES Valley View Landfill, Inc.,* 406 Ill. App. 3d 783, 790 (2010).

¶ 68    However, it is well established that where an adequate remedy at law exists, equitable relief such as a constructive trust or rescission is unavailable. *FultonCarroll Center, Inc. v. Industrial Council of Northwest Chicago, Inc.,* 256 Ill. App. 3d 821, 824 (1993); *Small v. Sussman*, 306 Ill. App. 3d 639, 647 (1999); *Newton,* 260 Ill. App. 3d at 720. "An adequate remedy at law is one which is clear, complete and as practical and efficient to the ends of justice and its prompt

22

administration as the equitable remedy." *Cross Wood Products, Inc. v. Suter,* 97 Ill. App. 3d 282, 286 (1981). Where the party's injury can be adequately compensated with money damages, then the party has an adequate remedy at law. *Lumbermen's Mutual Casualty Co. v. Sykes,* 384 Ill. App. 3d 207, 230-31 (2008). "A party seeking equitable relief has the burden of proving the inadequacy of a legal remedy." *CC Disposal,* 406 Ill. App. 3d at 788.

¶ 69     Here, according to plaintiffs' allegations in the complaint, the calculation of plaintiffs' damages is rather straight forward, that is, the difference between the price at which the properties were sold and the "much higher values" at which the properties were appraised when they were subsequently mortgaged. We further observe that plaintiffs' second amended complaint is fundamentally a request to secure money damages, as each count is followed by a request for compensatory damages. "Equity does not entertain complaints the fundamental object of which is to secure monetary damages." *LaSalle National Bank v. Refrigerated Transport Co.,* 165 Ill. App. 3d 899, 901 (1987). Accordingly, plaintiffs have not shown that they have an inadequate remedy at law and we find no abuse of discretion in the trial court's decision.

¶ 70     In finding that the trial court correctly dismissed the second amended complaint, we further observe that plaintiffs have not presented any arguments on appeal as to the trial court's decision to dismiss with prejudice. Plaintiff has thus forfeited any challenge to this issue. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Pleadings should generally be dismissed with prejudice pursuant to section 2-615 "only if it is clearly apparent that no set of facts can be proven that will entitle the plaintiff to recover." *Blazyk v. Daman Express, Inc.,* 406 Ill. App. 3d 203, 209 (2010). As the trial court observed, this was plaintiffs' third attempt as stating a cause of action against defendants, and plaintiffs have failed to do so. We therefore affirm the dismissal with prejudice. *Bellik v. Bank of America,* 373 Ill. App. 3d 1059, 1065-66 (2007).

¶ 71                                    F. Discovery

¶ 72    In their final claim, plaintiffs argue that the trial court improperly denied their request for discovery before it granted the motions to dismiss the second amended complaint. Plaintiffs assert that discovery would have allowed them to file a more detailed complaint.

¶ 73    "A trial court has great latitude in ruling on discovery matters." *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373, 380 (2004). "A circuit court has wide latitude in ruling on discovery motions, and we will not disturb such a ruling unless it constitutes a manifest abuse of discretion." *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 513 (2005). "A court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." *Id.* "A trial court may properly quash a discovery request when it has sufficient information upon which to decide a defendant's motion to dismiss." *Adkins Energy,* 347 Ill. App. 3d at 381. "However, it should not refuse a discovery request and grant a motion to dismiss when it reasonably appears that discovery may assist the nonmoving party." *Id.* "Discovery is not necessary where a cause of action has not been stated." *Evitts*, 359 Ill. App. 3d at 514.

¶ 74    On the record before us, we cannot say that the trial court's decision to deny plaintiffs' discovery request and rule on the motion to dismiss was arbitrary, fanciful, or unreasonable. *Evitts*, 359 Ill. App. 3d at 513. As noted, this was plaintiffs' third attempt to successfully state a claim against defendants since they instituted the action in September 2017. Prior to that, plaintiffs had been litigating the same matter against Maesel and his employer since April 2016, including discovery in that related case. Plaintiffs do not expound upon their assertion that the trial court improperly granted the dismissal before denying their discovery request. Plaintiffs have not given any indication what information it reasonably appears they may have gained from discovery that

would have assisted them in defending against the motions to dismiss. *Id.*; *Adkins Energy,* 347 Ill. App. 3d at 381. As such, we find no abuse of discretion in the trial court's denial of their motion for discovery. *Id.*

¶ 75                                    III. CONCLUSION

¶ 76     For the reasons explained above, we affirm the trial court's orders granting defendants' motions to dismiss pursuant to section 2-615 of the Code and denying plaintiff's motion for discovery.

¶ 77     Affirmed.